IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:24-CR-130 (RMR)

UNITED STATES OF AMERICA

v.

DANIEL LARSON,

Defendant.

### DANIEL LARSON'S MOTION FOR IMMEDIATE RELEASE

Mr. Larsen, through undersigned counsel, respectfully requests that this Court order his release from custody pursuant to the Bail Reform Act (BRA) and the Fifth Amendment's Due Process Clause. Supreme Court precedent makes it unlawful and unconstitutional for a court to hold a Detention Hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f). As all six courts of appeals to directly address the question have recognized, the only permissible bases for detaining a defendant at the Initial Appearance and proceeding to a Detention Hearing are the enumerated factors set out in 18 U.S.C. § 3142(f). Importantly, the government did not move for detention pursuant to § 3142(f)(2). Docket Entry Number ("DE") 1-1:2. As a result, the government cannot rely on either factor.

Because Mr. Larsen is not charged with a § 3142(f)(1) offense, this is a "non-(f)(1) case" where only a showing of one of the § 3142(f)(2) "serious risk" factors would authorize holding a Detention Hearing.[1] In this case, the government did not move to detain Mr. Larsen pursuant to § 3142(f)(2) nor did it present sufficient evidence that Mr. Larsen poses a serious risk of flight. Mr.

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 91 (2022), https://freedomdenied.law.uchicago.edu/report.

Larsen is therefore being detained unlawfully. Accordingly, Mr. Larsen must be released on bond immediately with appropriate conditions of release. *See* § 3142(a)–(c).

In a new national study, The University of Chicago Law School's Federal Criminal Justice Clinic (FCJC) found that courts nationwide do not consistently adhere to the legal standard in non-(f)(1) cases, in violation of the Bail Reform Act.[2] Across hundreds of non-(f)(1) cases like this one, 12% of defendants were unlawfully detained at the Initial Appearance, as "no statutory basis for detention existed under § 3142(f)."[3] In 97% of non-(f)(1) cases where the government was seeking detention, the prosecutor "cited improper grounds, like danger to the community or ordinary risk of flight."[4] Yet every single defendant was nevertheless detained at the Initial Appearance and faced an "improper Detention Hearing."[5] The study found that these practices exacerbated racial disparities.[6]

These troubling national data suggest that courts must vigilantly ensure that the government's detention requests comport with the BRA's requirements. The unlawful detentions the study documents are likely "just the tip of the iceberg."[7] In fact, 60% of all federal pretrial cases are non-(f)(1) cases, meaning that in over half of cases nationwide, "there is a real question of whether the law allows a judge to hold a Detention Hearing at all."[8] Yet defendants are detained at the Initial Appearance in 76% of non-(f)(1) cases nationwide, even though the "only valid ground for detention in such cases requires the prosecutor to prove that the arrestee poses a 'serious risk' of flight or

---

[2] *Id.* at 93.
[3] *Id.* at 95.
[4] *Id.* at 99.
[5] *Id.*
[6] *Id.* at 97–100 (finding that people of color were unlawfully detained in non-(f)(1) cases at a higher rate compared to white defendants and that prosecutors cited improper bases for detention more frequently against people of color).
[7] *Id.* at 100.
[8] *Id.* at 92.

obstruction."[9] In this case, the government has not met that standard and Mr. Larsen must be released immediately.

## I. THE BRA ONLY AUTHORIZES DETENTION AT THE INITIAL APPEARANCE WHEN ONE OF THE § 3142(F) FACTORS IS MET

Mr. Larsen is being detained in violation of the law. According to the plain language of § 3142(f), "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in § 3142(f)(1) and (f)(2). None of the § 3142(f) factors are present in this case.[10] Ordinary "risk of flight" is not among the § 3142(f) factors. The statute and the caselaw prohibit this Court from holding a Detention Hearing and do not authorize the Court to detain Mr. Lawson pending trial.

### A. Supreme Court Precedent and the Plain Language of the BRA Prohibit this Court from Detaining the Defendant and Holding a Detention Hearing Without a § 3142(f) Factor.

The Supreme Court's seminal opinion in *United States v. Salerno*, 481 U.S. 739 (1987), confirms that a Detention Hearing may only be held if one of the seven § 3142(f) factors is present. *See id.* at 747 ("Detention hearings [are] available if" and only if one of the seven § 3142(f) factors is present.). According to the Supreme Court, "[t]he Act operates *only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f).*" *Id.* at 750 (emphasis added); *see also id.* at 747 ("The Bail Reform Act *carefully limits the circumstances under*

---

[9] *Id.* at 100.

[10] This case does not meet any of the five factors discussed in § 3142(f)(1), as it does not involve: (1) a crime of violence under (f)(1)(A); (2) an offense for which the maximum sentence is life imprisonment or death under (f)(1)(B); (3) a qualifying drug offense under (f)(1)(C); (4) a felony after conviction for two or more offenses under the very rare circumstances described in (f)(1)(D); or (5) a felony involving a minor victim or the possession/use of a firearm under (f)(1)(E).

The government has also presented no evidence to establish that this case meets either of the two additional factors discussed in § 3142(f)(2): (1) a "serious risk that Mr. Larson will flee" under (f)(2)(A); or (2) a "serious risk" that he will engage in obstruction or juror/witness tampering under (f)(2)(B)

*which detention may be sought* to the most serious of crimes," specifically the crimes enumerated in § 3142(f) (emphasis added)). *Salerno* thus stands for the proposition that the factors listed in § 3142(f) serve as a gatekeeper, and only certain categories of defendants are eligible for detention in the first place. In fact, "a central reason the Supreme Court upheld the BRA as constitutional in Salerno was the gatekeeping function of the (f) factors."[11] As the D.C. Circuit has held, "First, a [judge] must find one of six circumstances triggering a detention hearing.... [under] § 3142(f). Absent one of these circumstances, detention is not an option." *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999). "Every federal court of appeals that has examined this issue agrees that one of the § 3142(f) factors must be proven at the Initial Appearance in order to hold a Detention Hearing."[12]

For a court to lawfully move forward from an Initial Appearance hearing to a Detention Hearing, "the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing' by presenting a valid (f) factor."[13] If the government does not establish an applicable § 3142(f) factor by a preponderance of the evidence, several conclusions follow: (1) the government is prohibited from seeking detention, (2) there is no legal basis to detain the defendant at the Initial Appearance or pending a Detention Hearing, and (3) there is no legal basis for the court to hold a Detention Hearing.[14] Instead, the court is required to release the defendant on personal recognizance under § 3142(b) or on conditions under § 3142(c).

---

[11] Siegler, *supra* note 1, at 87.

[12] *Id.* at 88.

[13] *Id.* If the government does not move for detention, the Court may nevertheless find, on its own motion and by a preponderance of the evidence, that a § 3142(f)(2) factor authorizes the holding of a Detention Hearing.

[14] *Id.* at 88, 91; *Bail*, 51 GEO. L.J. ANN. REV. CRIM. PROC. 396, 399 (2022), https://www.westlaw.com/Document/I43b1e73f204811ed9f24ec7b211d8087/View/FullText.html?transiti onType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.

Detaining Mr. Larsen in this case without regard to the limitations in § 3142(f) raises serious constitutional concerns.[15] The strict limitations § 3142(f) places on pretrial detention are part of what led the Supreme Court to uphold the BRA as constitutional. It was the § 3142(f) limitations, among others, that led the Court to conclude that the Act was "regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Salerno*, 481 U.S. at 748.[16] Throughout its substantive Due Process ruling, the *Salerno* Court emphasized that the only defendants for whom the government can seek detention are those who are "already indicted or held to answer for a *serious* crime," meaning the "extremely serious offenses" listed in § 3142(f)(1). *Id.* (emphasis added); *see also United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (discussing the BRA's legislative history).

### B. The Courts of Appeals Agree that Detention Is Prohibited When No § 3142(f) Factor is Present.

Following the Supreme Court's guidance in *Salerno*, six courts of appeals agree that it is illegal to hold a Detention Hearing unless the government invokes one of the factors listed in 18 U.S.C. § 3142(f). *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d

---

[15] *See* Siegler, *supra* note 1, at 73–74, 87.

[16] The *Salerno* Court further relied on the limitations in § 3142(f) in another component of its substantive Due Process ruling, its conclusion that "the government's interest in preventing crime by arrestees is both legitimate and compelling." *Id.* at 749. To reach this conclusion, the Court contrasted the Bail Reform Act with a statute that "permitted pretrial detention of any juvenile arrested on any charge" by pointing to the gatekeeping function of § 3142(f): "The Bail Reform Act, in contrast, narrowly focuses on a particularly acute problem in which the Government interests are overwhelming. The Act operates *only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f).*" *Id.* at 750 (emphasis added). The Court emphasized that Congress "specifically found that these individuals" arrested for offenses enumerated in § 3142(f) "are far more likely to be responsible for dangerous acts in the community after arrest." *Id.*

987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999).[17] For example, the First Circuit holds: "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *Ploof,* 851 F.2d at 11. The Fifth Circuit agrees. *See Byrd,* 969 F.2d at 109 ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (2) is present," and "[d]etention can be ordered, therefore, only 'in a case that involves' one of the . . . circumstances listed in (f)." (quoting 18 U.S.C. § 3142(f)).

Unfortunately, a practice has developed that results in defendants being detained in violation of the BRA, *Salerno*, and the Constitution. Specifically, it is common for the government to seek detention at the Initial Appearance on the ground that the defendant is either "a danger to the community," "a risk of flight," or both.[18] According to the FCJC study on pretrial detention: "courtwatching data and stakeholder interviews show that lack of adherence to § 3142(f) is not an isolated problem in a few districts but is instead a nearly universal problem that spans federal courts throughout the country."[19] Because neither "danger to the community" nor ordinary "risk of flight" is a factor listed in § 3142(f), it is flatly illegal to hold a Detention Hearing on either of these grounds

---

[17] *See* Siegler, *supra* note 1, at 87–92. (providing a detailed explanation of the legal standard that applies at the Initial Appearance hearing).

[18] The clinic found that prosecutors "failed to cite a valid statutory basis for detention" in 81% of the Initial Appearances that the clinic court-watched and that prosecutors cited invalid bases such as "danger to the community" and "non-serious 'risk of flight'" in 38% of cases. *Id.* at 94–95. Compliance was even worse in the non-(f)(1) cases where the prosecutor sought detention: 97% of the time, the prosecutor "provided no legitimate basis for detention." *Id.* at 99 fig.12.

[19] *Id.* at 103. In response to these findings, some federal judges and defense attorneys have emphasized that federal pretrial detention is under "scrutinized," with Judge Nancy Gertner (ret.) telling USA Today "there should be court watchers all around the country." Tami Abdollah, *Study: Federal Magistrates, Prosecutors Misunderstand Bail Law, Jailing People Who Should Go Free,* USA TODAY (Dec. 7, 2022), https://www.usatoday.com/story/news/politics/2022/12/07/federal-judges-misapply-bail-lawillegally-jail-arrestees-study-says/10798949002/.

at the Initial Appearance.[20] The practice in this district must be brought back in line with the law.[21] That will only happen if this Court demands that the government provide a legitimate § 3142(f) basis for every detention request.[22]

## II. IT WAS ILLEGAL TO DETAIN MR. LARSEN AT ALL BECAUSE ORDINARY "RISK OF FLIGHT" IS NOT A STATUTORY BASIS FOR DETENTION AT THE INITIAL APPEARANCE

It was improper to detain Mr. Larsen and set a Detention Hearing because the government did not move for detention pursuant to § 3142(f)(2). Regardless, of the government's failure to adhere to a risk of flight analysis (§ 3142(f)(2)(A)), Mr. Larsen would not be detained for three reasons. First, the plain language of the statute permits detention at the Initial Appearance only when the defendant poses a "*serious* risk" of flight, § 3142(f)(2)(A), not an *ordinary* risk of flight. Second, the government bears the burden of presenting some *evidence* to substantiate its allegation that a defendant is a serious risk of flight, but here the government has provided no such evidence. Third, to establish "serious risk" of flight, the government must demonstrate that the defendant presents an "extreme and unusual" risk of willfully fleeing the jurisdiction if released, but the government has

---

[20] Siegler, *supra* note 1, at 91–92; *Bail*, *supra* note 14, at 400–01.
[21] *See id.* at 95 (finding that at 99% of the Initial Appearance hearings where the government failed to meet their legal burden and did not cite a valid basis for detention, the defendant was nevertheless detained).
[22] *See id.* at 107–109. Perhaps the confusion arises because the BRA is not organized in the order in which detention issues arise in court. Although the question of detention at the Initial Appearance comes first in the court process, it is not addressed until § 3142(f). To make matters worse, § 3142(f) itself is confusing. The first sentence of § 3142(f) lays out the legal standard that must be met *at the Initial Appearance* before "the judicial officer shall hold a hearing"—meaning a Detention Hearing. Confusingly, the first sentence of § 3142(f) then goes on to reference the legal standard that applies at the next court appearance, *the Detention Hearing*. See § 3142(f) (explaining that the purpose of the Detention Hearing is "to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community"). The long paragraph in § 3142(f) that follows § 3142(f)(2)(B) then describes the procedures that apply at the Detention Hearing in depth.

not met that burden here. Accordingly, it is improper to hold a Detention Hearing at all, let alone detain Mr. Larsen until the hearing can be held.

### A. Supreme Court Precedent and the Plain Language of the BRA Prohibit this Court from Detaining a Defendant as an Ordinary "Risk of Flight."

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "*serious* risk that [the defendant] will flee."[23] There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance"). According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)).

### B. It Was Improper to Detain Mr. Larsen Because the Government Has Provided No *Evidence* to Support its Claim that he Is a Serious Risk of Flight.

Where the government's only legitimate § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that the defendant poses a "serious risk" of flight, rather than the ordinary risk attendant in any criminal case. *See Friedman,* 837 F.2d at 49. Moreover, a defendant "may be detained *only if the record supports a finding* that he presents a serious risk of flight." *Himler*, 797 F.2d at 160 (emphasis added); *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the

---

[23] *See* Siegler*, supra* note 1, at 91 ("*[O]rdinary* risk of flight is … an impermissible basis on which to order detention at the Initial Appearance or schedule a Detention Hearing.").

government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *White*, 2021 WL 2155441, at *7 (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue"). After all, the statute authorizes detention only "*in a case that involves*" a "serious risk" that the person will flee. § 3142(f)(2)(A) (emphasis added). This contemplates a judicial finding about whether the case in fact involves a *serious* risk of flight.[24] The government must provide an evidentiary basis to enable the judge to make an informed decision, typically evidence that relates either to the defendant's history and characteristics or to the circumstances of the offense.[25] The government presented no such evidence here.

### C. Detaining a Defendant as a "Serious Risk of Flight" Is Appropriate Only in "Extreme and Unusual Circumstances" Involving a Heightened Risk of "Intentional" Flight.

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[26] The government must demonstrate that

---

[24] Had Congress intended to authorize Detention Hearings based on a mere certification by the government, Congress could have enacted such a regime, just as they have done in other contexts. *See, e.g.*, 18 U.S.C. § 5032 (creating exception to general rule regarding delinquency proceedings if "the Attorney General, after investigation, certifies to the appropriate district court of the United States" the existence of certain circumstances); 18 U.S.C. § 3731 (authorizing interlocutory appeals by the government "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding").

[25] *See* Siegler, *supra* note 1, at 109 ("Because the law demands a showing that any risk of flight is "serious," the prosecution should present some evidence to meet its burden, such as evidence about the particular arrestee's history and characteristics (e.g., past failures to appear in court) or to the circumstances of the offense (e.g., the person led the police in a high-speed chase).").

[26] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases.*") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see*

the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. Courts have articulated the elements of this extreme or unusual standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. See *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); see also *United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.[27] See *White*, 2021 WL 2155441, at *7 (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of nonappearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings"). Risk of flight is not the same as risk of nonappearance, see *White*, 2021 WL 2155441, at *10, and a defendant should never be detained as a "serious risk" of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

---

also *Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

[27] See Lauryn Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 725 (2017). This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), *id.* at 735, or a "low-cost non-appearance" (who unintentionally fails to appear), *id.* at 729, can be addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services.

III.     MR. LARSEN REQUESTS IMMEDIATE RELEASE WITH CONDITIONS

Because there is no basis to detain Mr. Larsen, he should be released immediately under, including, but not limited to, residing at a halfway house, GPS monitoring, and participation in mental health treatment. These conditions will "reasonably assure" Mr. Larsen's appearance and the safety of the community. § 3142(c).

Respectfully submitted, this 9th day of May, 2024.

                              VIRGINIA L. GRADY
                              Federal Public Defender

                              *s/ Jared Scott Westbroek*
                              JARED SCOTT WESTBROEK
                              Assistant Federal Public Defender
                              633 17th Street, Suite 1000
                              Denver, CO  80202
                              Telephone: (303) 294-7002
                              FAX: (303) 294-1192
                              Email:  jared_westbroek@fd.org
                              Attorney for Mr. Larson

## CERTIFICATE OF SERVICE

  I hereby certify that on May 9, 2024, I electronically filed the foregoing **DANIEL LARSON'S MOTION FOR IMMEDIATE RELEASE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alison M. Connaughty, Assistant United States Attorney
Email: alison.connaughty@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Daniel Larson (via U.S. Mail)

VIRGINIA L. GRADY
Federal Public Defender

*s/ Jared Scott Westbroek*
JARED SCOTT WESTBROEK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email:  jared_westbroek@fd.org
Attorney for Mr. Larson