IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:24-CR-130 (RMR)

UNITED STATES OF AMERICA,

v.

DANIEL LARSON,

Defendant.

## DANIEL LARSON'S STATUS REPORT AND REQUEST FOR IMMEDIATE TRANSPORT TO A "SUITABLE FACILITY"

For almost three months now, Mr. Larson has languished in the Federal Detention Center ("FDC") in Englewood, Colorado, simply because he has been found incompetent and the Court has committed him to the custody of the Attorney General for placement in a "suitable facility" (i.e., hospital) "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d); Docket Entry Number ("DE") 26. The U.S. Marshalls have indicated the Bureau of Prisons ("BOP") has yet to designate a facility for Mr. Larson's restoration evaluation because it has a backlog of inmates waiting for restoration services.[1] The government's failure to immediately transport Mr. Larson to a BOP facility – and his continued detention at the FDC – violates his rights under both the Insanity Defense Reform Act ("IDRA") and his right to a Speedy Trial under 18 U.S.C. § 3161.

---

[1] The government has indicated Mr. Larson will be transported to a BOP facility in December – more than five months after this Court found him incompetent and ordered him transferred to a suitable facility. The BOP's failure to have sufficient mental health facilities in place, thus creating significant delays for restoration services, is not new. There has been significant litigation – including in this district – centered on this exact issue. *See e.g., United States v. Castrellon,* 1:22-CR-112-GPG (D. Colo. 2023). Moreover, the delays have been reaching into the eight- and nine-month marks on a regular basis. *Id.*

To avoid both issues, the Court should order the BOP to make a facility available within 7 days, transport Mr. Larson to that facility, and that BOP provide the Court with a restoration evaluation by November 25, 2024. If BOP fails to do either, the Court should dismiss this case.

## I. RELEVANT PROCEDURAL HISTORY

The government filed an indictment alleging Mr. Larson violated 18 U.S.C. § 844(e), Counts 1 through 5, and 7, and 18 U.S.C. § 875(c), Count 6, on April 25, 2024. DE 1. Mr. Larson was arrested on May 1, 2024. DE 4. After Mr. Larson's Arraignment, Discovery, and Detention Hearings on May 10, 2024, DE 12, he was ordered detained. DE 15. On May 23, 2024, both the government and Mr. Larson's counsel jointly filed a request for a psychological evaluation. DE 17. The Court issued an order granting the motion the same day. DE 18.

Mr. Larson was transported to the FCI for his evaluation on May 30, 2024. DE 25:2. BOP filed its evaluation on July 11, 2024 – 42 days after Mr. Larson arrived for his evaluation. DE 22. The BOP did not request an extension to complete the evaluation. DE 25:2. The BOP found Mr. Larson to be incompetent, DE 22, and the Court ordered Mr. Larson committed to the custody of the Attorney General for a restoration examination and treatment on July 26, 2024. DE 26:2.

## II. A COMPREHENSIVE STATUTORY SCHEME AND SUPREME COURT CASELAW LIMIT PREHOSPITALIZATION CONFINEMENT OF INCOMPETENT DEFENDANTS

Because the issues presented in this motion are complex, namely the interplay between the IDRA and STA, a review of the statutory scheme and precedent limiting Mr. Larson's prehospitalization custody is necessary for the Court to understand and evaluate Mr. Larson's request for relief.

### A. The Insanity Defense Reform Act.

The IDRA provides comprehensive rules and procedures governing the process for competency determinations and restoration of incompetent defendants to stand trial. It also imposes

independent time limits on pre-trial detention of incompetent defendants. Under the IDRA, the process begins with a request to determine a defendant's competency. § 4241(a). After the Court finds "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," *id.*, the Court can "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." § 4241(b). For that evaluation, "the court may commit the person to be examined for a reasonable period, but *not to exceed* thirty days ... to the custody of the Attorney General. § 4247(b) (emphasis added). The "director of the facility may apply for a reasonable extension, but not to exceed fifteen days ... upon *a showing of good cause* that the additional time is necessary to observe and evaluate the defendant." *Id.* (emphasis added).

After the Court receives that report, and finds the person incompetent, the Court is required to commit him to the custody of the Attorney General. § 4241(d). At that point, the Attorney General *must* "hospitalize the defendant at a suitable facility," and the time period for doing so is strictly limited:

> The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) *for such a reasonable period of time,* **not to exceed four months**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) *for an additional reasonable period of time* until—
>
> (A) his mental condition is so improved that trial may proceed, *if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward*; or
>
> (B) the pending charges against him are disposed of according to law; whichever is earlier.

*Id.* (emphasis added).

In other words, the IDRA *strictly* limits the mandated evaluation/restoration period that follows an incompetency finding to four months. And the IDRA provides only *one* exception to that four-month time limit; a court may *extend* the initial four-month period "for an additional reasonable period of time," but only if the court first finds that "there is a substantial probability that *within such additional period of time* [the defendant] will attain competency to permit proceedings to go forward." § 4241(d)(1)(A) (emphasis added).

### B. *Jackson v. Indiana* and the constitutional prohibition on limitless detention of incompetent defendants.

The IDRA's time limit on the detention of incompetent defendants is not merely a statutory directive; it is a Supreme Court mandate. In *Jackson v. Indiana*, the Supreme Court struck down as unconstitutional an Indiana statute that permitted the state to detain incompetent defendants indefinitely based solely on their incompetence. 406 U.S. 715, 720 (1972). In doing so, the Court warned that a statutory scheme that permits any form of *limitless* detention of incompetent defendants likely will not pass due process muster, holding that the government "cannot constitutionally commit [a defendant] for an indefinite period simply on account of his incompetency to stand trial on the charges filed against him." *Id.* Instead, *Jackson* held the applicable statutory scheme must limit such detentions both in time (by requiring that custody for a restoration assessment be limited to a "reasonable period of time") and in scope (by requiring the confinement at all times bear a reasonable relationship to and further the goal of competency restoration). *See id.* at 738-39. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738.

Congress enacted § 4241 in direct response to *Jackson* and specifically to ensure that the federal statutory scheme governing the confinement of incompetent defendants did not deny a

person's due process rights. *See* S. Rep. No. 225, 98th Cong., 2d Sess. 250, 253; *see also United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007); *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990). As both the statute's text and history make clear, the point of § 4241's four-month period was to delineate the "reasonable period" described in *Jackson* and to prohibit limitless detention of defendants once they have been deemed incompetent. *See Strong*, 489 F.3d at 1302. Thus, in compliance with *Jackson*, once a court finds a defendant incompetent to proceed and commits the defendant to the Attorney General's custody for restoration, the statute caps the amount of time the government may take to fulfill the limited purpose, setting four months as a maximum, but requiring at all times that the length of time be "reasonable"—both the initial evaluation period and any subsequent extensions. § 4241(d); *United States v. Anderson*, 679 F. App'x 711, 712-13 (10th Cir. 2017) ("The language in § 4241(d) is unambiguous and mandatory—after finding that [a defendant] was mentally incompetent to stand trial, the district court was required to commit [that defendant] to the Attorney General's custody.").

### C. The Speedy Trial Act.

The STA sets the general limits on how long a case may take from start to finish and, as a result, how long a defendant may be detained pending trial. Under the STA, a defendant's trial must commence within 70 days from the date of information or indictment. *See* § 3161(c)(1). "If a defendant is not brought to trial within the time limit required," the indictment "shall be dismissed on motion of the defendant." § 3162(a)(1).

The STA provides for certain exclusions from the 70-day limit related to mental competency. First, time does not count toward the 70-day limit if it arises from "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." § 3161(h)(1)(A). Importantly, though, the Act separates from that general exclusion any time related to *transporting* a defendant to a destination related to competency,

treatment, or assessment. Specifically, the Act provides that "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization" are excluded from the 70 days, but only *up to ten days* from the date of the order that directed the examination or hospitalization, with any time in excess of ten days presumed unreasonable. § 3161(h)(1)(F) (emphasis added). Finally, the STA includes a separate provision excluding "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." § 3161(h)(4).

## III. THE GOVERNMENT'S AUTHORITY TO DETAIN MR. LARSON FOR § 4241's EVALUATION/RESTORATION PERIOD WILL EXPIRE NO LATER THAN NOVEMBER 25, 2024

The four-month time limit specified in § 4241(d)(1) is unyielding and unambiguous. Unlike some other timeframes set by the IDRA – *e.g.*, § 4247(d) – there are no allowances for extensions upon a showing of good cause. After the four months have expired, the Court may extend Mr. Larson's commitment **only** if "the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." § 4241(d)(2)(A). The BOP's time to evaluate Mr. Larson – and submit a report regarding its evaluation – will expire no later than November 25, 2024. To avoid this problem, the Court should order the BOP to designate a facility within the next 7 days, immediately transfer Mr. Larson to that facility for examination/restoration services, and the BOP provide its report regarding its evaluation no later than November 25, 2024.

### A. The Attorney General Will Lose Its Authority to Hold Mr. Larson.

Because the IDRA only grants the government 120 days to evaluate Mr. Larson, the Attorney General's authority to detain Mr. Larson further will expire on November 25, 2024. At this point, the Attorney General's only authority to detain Mr. Larson is the authority provided in the IDRA. It goes without saying, if the Attorney General squanders the authority granted by the IDRA, it will

lose its authority to detain Mr. Larson at all. If the Attorney General "has no authority even to detain a man," certainly, it cannot ask to illegally detain him further.[2] That alone will render Mr. Larson's continued detention after that date in BOP custody unlawful.

The date upon which the IDRA's four-month custodial commitment period begins to run – at commitment or hospitalization – has received scant analysis in this district – it has been an issue it two district court cases: first in *United States v. Moore*, 1:06-CR-235 (D. Colo. 2006) and recently in *United States v. Castrellon*, 1:22-CR-112-GPG (D. Colo. 2023). Judge Blackburn's order in *United States v. Moore*, 1:06-CR-235 (D. Colo. 2006) is instructive. Judge Blackburn, presented with the same issue, found the IDRA's four-month period began once the court entered its order committing the defendant to the custody of the Attorney General. Judge Blackburn found "that the four-month period runs from the date of the commitment order" because it "is necessary to preserve the expedited process intended by Congress and to eschew administrative prolongation through control of the delivery of the person to the appropriate hospital." DE 61 (attached as Exhibit A thereto).

Another court in this district recently found that, although the four-month period began running only after the defendant was actually hospitalized, "a pre-hospitalization commitment period of six months and beyond is unreasonable." *United States v. Castrellon*, 1:22-CR-112-GPG (D. Colo. 2023) (*citing Donnelly*, F.4th at 1106 ("We do not think *Jackson's* 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the

---

[2] If the Attorney General "has no authority even to detain a man," certainly, it cannot ask to illegally detain him further. *Cf. United States v. Charters*, 829 F.2d 479, 484 (4th Cir. 1987), *on reh'g*, 863 F.2d 302 (4th Cir. 1988) (reversing forcible medication order because the defendant's "federal custodians do not at present have legal authority to detain Charters because procedures mandated by federal statutes governing detention of the mentally ill in federal facilities have not been followed" and concluding that "[i]f the federal government has no authority even to detain a man, it surely cannot forcibly inject him with chemicals which may well be dangerous and mind altering short of an emergency requiring such intrusion").

maximum time Congress permitted for the period of hospitalization itself."). Judge Gallagher dismissed the indictment against Mr. Castrellon, finding that "[a] lesser sanction will not address the significant wrongs inflicted upon Defendant in this case nor will remedy the behavior of the Government to ensure the timely hospitalization of incompetent defendants." DE 68 (attached as Exhibit B thereto).

Judge Blackburn cited a Sixth Circuit case to support his straightforward analysis of § 4241(d)(1)'s time limitations. In *United States v. Baker*, the Sixth Circuit held the four-month clock begins to tick upon the entry of the order committing a defendant to the custody of the Attorney General. *Baker*, 807 F.2d at 1317 ("we hold that: (1) the district court's initial commitment of Baker was valid only up to a period of four months..."). After a competency hearing, the district court found Mr. Baker incompetent and, pursuant to § 4241(d), placed him in the custody of the Attorney General. *Id.* at 1318 (punctuation omitted).  Mr. Baker was confined in the custody of the Attorney General for six months after he was found incompetent. The Sixth Circuit held § 4241(d) "requires that a determination as to the individual's mental condition be made within four months, and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time." *Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986). Because Mr. Baker

> was held from September 30, 1985 until March 1986 before the government filed a motion to dismiss the probation violator's warrant. This confinement was clearly in excess of four months, and there is nothing in the record to indicate that his period of confinement was properly extended. Therefore, although the court's initial commitment of appellant on September 30th was valid, we hold that there was no authority to confine appellant beyond the four months authorized by section 4241(d).

*Id.* at 1320.

A well-reasoned 2022 opinion by Judge Friedrich of the U.S. District Court for the District of Columbia is also instructive. In that case, *United States v. Carter*, Judge Friedrich persuasively

rejected the government's appeal for indefinite detention of incompetent defendants under the IDRA and rightly construed § 4241(d)(1)'s four-month limit as starting *from the moment that the defendant is committed to the Attorney General's custody,* not at the point that the defendant finally is placed in a suitable facility for treatment. 583 F. Supp. 3d 94, 100 (D.D.C. 2022). Key to Judge Friedrich's analysis was his rejection of the government's argument that, once a defendant has been deemed incompetent, § 3161(h)(1)(F)'s ten-day limit on transporting a defendant to hospitalization no longer applies and the Speedy Trial Act clock instead is indefinitely paused under §3162(h)(4). *Id.* at 98, 101.

Judge Friedrich previously had adopted the government's view on that construction of the Speedy Trial Act, but noted that doing so required her to construe the IDRA as limiting that time instead:

> In denying, the defense's speedy trial motion, this Court explained that **the [Speedy Trial] Act and IDRA work together** to require the timely resolution of cases like this one: Whereas the Speedy Trial Act requires the parties to work quickly before a finding of incompetence, IDRA requires the government to work quickly thereafter. The government's reading of § 4241(d)(1), however, would create a substantial hole in this statutory scheme. Under that reading, defendants in Carter's position would lack any statutory recourse against potentially indefinite delays in transporting them to a suitable facility. It is hard to imagine that Congress, which passed § 4241 to codify the Supreme Court's due process precedents intended such a result.

*Id.* at 101 (emphasis added).

In other words, if the government wishes to free itself of the Speedy Trial Act's limitations on transport delays by arguing that a defendant's incompetence halts that Act's clock indefinitely, it must accept the limits imposed by the IDRA. Otherwise, the statutory scheme would permit indefinite confinement based solely on incompetence, which neither comports with congressional intent nor the constitutional guarantees articulated in *Jackson.*

That view is supported by the plain text of the statute as well. Again, as Judge Friedrich explained:

> [T]he plain text of § 4241(d)(1) provides that the government "shall hospitalize" an incompetent defendant as soon as the government obtains "custody" over him. The government obtained custody over [the defendant], within the meaning of that provision[.] And § 4241(d)(1) does not mention delays in transporting defendants for hospitalization, let alone subject them to a different timetable. Accordingly, to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the "reasonable period of time, not to exceed four months." Likewise, the government may not delay the four-month deadline by detaining an incompetent defendant in a non-hospital setting.

*Id.*

This question has received little analysis by the Tenth Circuit or any other circuit. The Ninth Circuit issued an opinion in 2022, *United States v. Donnelly*, dealing with the Attorney General's authority to detain a person for § 4241(d) proceedings. 41 F.4th 1102. *Donnelly*, however, punted on the specific issue of whether § 4241(d) authorizes any amount of prehospitalization confinement. *Donnelly* did state that it believed "the text of § 4241(d) makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized." 41 F.4th at 1105. Its belief was cabined, however; the court **expressly** did not decide "whether [§ 4241(d)] permits a delay between commitment and hospitalization." *Id.* In fact, the panel went on to state that it did "need not decide whether the statute allows some amount of pre-hospitalization confinement because the delay [t]here falls outside any constitutional reading of the statute." *Id.* In other words, while the Ninth Circuit found that while § 4241(d)'s four-month limit begins to run once the defendant arrives at the hospital, but it did not opine whether § 4241(d) authorized any amount of prehospitalization confinement before he actually arrives at that hospital. The implications of its decision, however, clearly imposes *at least* a six-month limitation on prehospitalization detention.

Relying on *Donnelly* to support a finding that § 4241(d)'s four-month period begins once the defendant is received at the hospital, however, is problematic. *Donnelly* did not engage – or answer – the question of whether § 4241(d) "permits a delay between commitment and

hospitalization." 41 F.4th at 1105.; DE 44:4-5, 7. If § 4241(d) *does not* permit any delay between the time the defendant is found incompetent and his arrival at the hospital, it *necessarily* imposes a 120-day limit on the amount of time the Attorney General is authorized to hold a defendant in prehospitalization confinement under the IDRA. As a result, the fact that § 4241(d) does not specify the amount of prehospitalization confinement that is permitted coupled with any limitation Congress intended, would lead to the exact same result regardless of whether the 120-day period begins the day the person is received at the hospital or found incompetent; the Attorney General's authority to confine the person for the evaluation expires at day 120.

Judge Waterford's concurrence in *Donnelly* makes this point clear – the four-month period of confinement does not permit a delay between commitment and hospitalization, and the 120-day clock starts ticking the day the person is committed to the custody of the Attorney General to be evaluated. 41 F.4th at 1108 (Watford, J., concurring). Judge Waterford believed, with § 4241(d), "Congress plainly imposed four months as the outside limit on the entire period a defendant is committed to the custody of the Attorney General for treatment and evaluation, inclusive of any pre-hospitalization delay." *Id.* He went on to write:

> Nothing in the text of § 4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of pre-hospitalization commitment subject to no statutory time constraints whatsoever, to be followed by a period of hospitalization subject to a strict four-month time constraint. The statute simply provides that upon finding the defendant not competent to stand trial, a district court "shall commit" the defendant to the custody of the Attorney General. In the same breath, the statute states that the Attorney General "shall hospitalize" the defendant for treatment and evaluation for a reasonable period of time not to exceed four months. The provision is most sensibly read as imposing an outside time limit on the entire period of commitment, from issuance of the court's commitment order to completion of the defendant's period of hospitalization. See *United States v. Carter*, --- F.Supp.3d ----, ----, 2022 WL 483636, at *5 (D.D.C. Jan. 27, 2022). That is the view reflected in the statute's legislative history, which makes no mention of two separate time periods, but instead describes a single period of "commitment under section 4241" that "may not exceed four months." S. Rep. No. 98-225, at 236 (1983); s*ee also United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007) (reading the statute the same way). It seems plain to me from the text and legislative history that Congress

> assumed a defendant would be hospitalized in short order following his commitment to the custody of the Attorney General, such that four months would afford adequate time for the entire evaluation process to be completed.

*Id.*

Judge Waterford's answer to the question of how much prehospitalization confinement § 4241(d)(1) authorized, therefore, was simple – **none**. He would have held "Congress intended § 4241(d)(1)'s four-month time limit to apply to the entire period of confinement, not just the period of hospitalization." *Donnelly*, 41 F.4th at 1109 (Watford, J., concurring). He recognized at the time Congress enacted § 4241(d) it anticipated the very problem presented here (the limitation of prehospitalization confinement based on the space at a suitable hospital). *Id.* "Congress specifically authorized the Attorney General to 'contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter.' § 4247(i)(A)." *Id.* at 1108-09. Based on the authority the IDRA grants Attorney General to contract with other providers, "Congress envisioned only a short gap between issuance of a commitment order under § 4241(d)(1) and a defendant's hospitalization." *Id.*

The IDRA is detailed, specific, and comprehensive. It tracks every step of the competency process, from initial competency determination to the moment a defendant is deemed unrestorable, at which point the criminal case ceases to justify the defendant's detention. And that "three-step process" enacted by Congress "expressly incorporates the rule of reasonableness." *United States v. McKown*, 930 F.3d 721, 727 (5th Cir. 2019). There is no reason to believe that Congress envisioned a secret, unregulated step in the middle of that process that is fully unmoored from *Jackson*'s reasonableness mandate, during which an incompetent defendant may simply languish in a local facility indefinitely, waiting for the Attorney General to fulfill its statutory duty to complete a restoration assessment simply because he is incompetent. Put another way: "Nothing in the text of §

4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of pre-hospitalization commitment subject to no statutory time constraints whatsoever, to be followed by a period of hospitalization subject to a strict four-month time constraint." *Donnelly*, 41 F.4th at 1108 (Watford, J., concurring).

That obvious reading of the statute places the IDRA in full harmony with due process. Of course, a fundamental canon of statutory construction is that "where an otherwise acceptable construction of a statute would raise serious constitutional problems," a court should "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988). That cannon combined with clear congressional intent to comply with *Jackson* means, as the Seventh Circuit has explained, that one of the "guiding principles to interpreting the Insanity Defense Reform Act" is that "commitment proceedings pursuant to the statute must comport with due process." *United States v. Shawar*, 865 F.2d 856, 859 (7th Cir. 1989).

And that is exactly what the IDRA does. As both the statute's text and history make clear, the point of § 4241's four-month period was to delineate the "reasonable period" described in *Jackson* and to *prohibit* limitless detention of defendants once they have been deemed incompetent and in need of restoration assessments. *See* S. Rep. No. 225, 98th Cong., 2d Sess. 250, 253. Once a court finds a defendant incompetent to proceed and he is placed in the custody of the Attorney General on that ground, the statute imposes an unequivocal cap on the amount of time the government may take to fulfill the limited purpose of determining the probability of restoration. Congress requires the government to both undertake and complete a restoration assessment within four months.

Indeed, that four-month limit and the "reasonable relation" it must bear to the purpose for which the individual is held have been central to decisions in other circuits deeming IDRA commitment constitutional:

> In contrast to the statute at issue in *Jackson*, the duration of commitment under § 4241(d) 'is inherently limited.' Aside from the statutory cap of four months, the length of custody is restricted to 'such a reasonable period of time . . . as is necessary' to determine whether the defendant will attain sufficient capacity in the foreseeable future.

*McKown*, 930 F.3d at 728 (quoting *Strong*, 489 F.3d at 1061 and 18 U.S.C. § 4241(d)).

That is critical because § 4142(d) commitment is *mandatory*. As the Fifth Circuit has explained: "*Jackson* allows the automatic imposition of confinement *so long as the custody is not indefinite*." *McKown*, 930 F.3d at 729 (emphasis added). In other words, a statute that imposes mandatory commitment upon a finding of incompetence is unconstitutional if the statute does not impose a strict, statutorily imposed time limit on the period that follows the incompetency determination. That is what distinguishes the federal scheme from the Indiana statute struck down in *Jackson*. *Id.* at 726 ("[*Jackson*] involved an Indiana statute that—*unlike the federal scheme*—authorized the indefinite confinement of an incompetent defendant without an evaluation of his dangerousness or ability to 'attain[ ] competency through custodial care or compulsory treatment.'" *McKown*, 930 F.3d at 729 (emphasis added) (alterations in original) (quoting *Jackson*, 406 U.S. at 738).

Accordingly, the Attorney General's authority to detain Mr. Larson for purposes of the restoration assessment mandated by § 4241(d) began on July 15, 2022 and will end on November 25, 2022. The Attorney General has no authority to hold Mr. Larson in its custody beyond that point and no further action could be taken under § 4241(d). This Court should order the BOP to designate a facility within 7 days, immediately transport Mr. Larson to that facility, and file the appropriate report by November 25, 2024.

**B. Mr. Larson's continued detention would be patently unreasonable if he is not immediately transported to a suitable facility.**

Accepting the view that IDRA's four-month time period only begins the moment the government finally physically places Mr. Larson in a suitable hospital facility, allowing the Attorney General to continue to confine him indefinitely before he is transported to a hospital is unlawful because that prehospitalization confinement is patently unreasonable under IDRA and *Jackson*.

As discussed above, *Donnelly* examined whether the amount of time the Attorney General is authorized to detain a person under § 4241(d)(1). 41 F.4th at 1102. Critically, all three judges in *Donnelly* agreed the six months that the defendant sat in jail waiting to be transported to a suitable medical facility was unreasonable, in violation of the IDRA and *Jackson*. *Id*. The Court explained: "The Constitution does not permit any portion of a defendant's commitment under § 4241(d) to last indefinitely." *Id*. The court then interpreted IDRA's extensive "reasonableness" language—referencing *Jackson*—to set an implicit limit on how long the government may hold a defendant in local custody before actually undertaking its statutory duty to restore him. *Id*.

The court found the six months the defendant had been detained crossed the "reasonableness" line:

> We do not think *Jackson*'s 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself. Thus, we have little difficulty concluding that whatever the outer limit of § 4241(d), the length of Donnelly's confinement exceeds it. That fact is even more evident today, as Donnelly has now been held in the pre-hospitalization custody of the Attorney General for more than eight months—twice as long as the maximum period Congress authorized for the entire length of a defendant's hospitalization.

*Donnelly,* 41 F.4th at 1106. Having found a violation of the statute, the Ninth Circuit ordered that the defendant be transported to a medical facility within seven days.

Even if this Court determines that IDRA's four-month commitment period does not commence until the moment Mr. Larson sets foot at a facility, *Jackson* mandates that IDRA impose *some limit* on the *entire* period Mr. Larson has been detained following his incompetency finding. Indeed, neither *Jackson*—nor, by extension the IDRA—permit that period to be indefinite. Instead, by the IDRA's express terms, the period must be reasonable. *Cf. United States v. Wayda*, 966 F.3d 294, 306-09 (4th Cir. 2020) (finding that a six-month period in which the government failed to act following a finding of unrestorability was not reasonable).

Moreover (and critically here), Mr. Larson's continued prehospitalization confinement – which might be five months – is patently unreasonable. It would more than double the "reasonableness" benchmark set by Congress in the IDRA, which *Donnelly* found unreasonable. And none of that time has any relationship whatsoever to accomplishing the evaluation mandated by § 4241(d).

It is worth noting, too, that this is not an isolated problem, making the delay in this case even more unreasonable. Indeed, the government has been engaging in this conduct for at least a decade—subjecting defendants to lengthy prehospitalization confinement without assessment or treatment because there is a "bed space shortage" and FMC Butner was to blame. Courts long have identified this as an issue.[3] Moreover, in the Speedy Trial context, courts have made clear that resource shortages—i.e., failure to allocate proper resources for statutory duties—do not justify refusal to comply with legislative mandates. *E.g., United States v. Castle*, 906 F.2d 134, 137-138 (5th Cir. 1990).

---

[3] *See, e.g., United States v. Smith*, 764 F. Supp. 2d 541 (W.D.N.Y. 2011) (observing, over a decade ago, an identical problem with lack of available beds at BOP medical facilities for competency restoration and the government's inability to provide even an estimate of when a bed would become available).

And, despite its knowledge of lengthy delays and shortages at BOP, the government repeatedly refuses to pursue local alternatives under § 4247(i)(A).[4]

Permitting Mr. Larson's to remain in custody beyond § 4241(d)'s four-month limit before he is even transported to a suitable facility is unlawful. Such detention would fail to satisfy the IDRA and *Jackson*'s reasonableness requirement.

### C. The STA will be violated.

The STA sets general limits on how long a case may take from start to finish and, as a result, how long a defendant may be detained pending trial. Under the STA, a defendant's trial must commence within 70 days from the date of the information or indictment. *See* § 3162(a)(1). The STA permits specified exclusions from the 70-day limit related to mental competency. First, time does not count toward the 70-day limit if it arises from "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." § 3161(h)(1)(A). The STA also includes a separate provision excluding "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." § 3161(h)(3)(4).

Importantly, though, the Act separates from that general exclusion any time related to transporting a defendant to a destination related to competency treatment or assessment. Specifically, the Act provides that "delay resulting from transportation of any defendant…to and from places of examination or hospitalization" are excluded from the 70 days, but only up to ten days from the date of the order that directed the examination or hospitalization, with any time in excess of ten days presumed unreasonable. § 3161(h)(1)(F).

---

[4] Colorado has a statutory system for civil commitment of incompetent individuals. *See* Colo. Rev. Stat. § 27-65-101, *et. seq.* Because Colorado has a system for providing effective care, custody, and treatment to incompetent individuals, federal civil commitment under § 4246 is unnecessary.

Any attempt to evade the STA's limits on indefinite detention of incompetent defendants rests on employing a strained reading of that statute's text and district court cases. Multiple district courts have persuasively held that the STA's transport limit applies not just to delays arising from initial competency evaluations, but to the period following an incompetency finding as well.[5]

The ongoing delay in this case following the Court's order is not the result of Mr. Larson's incompetence – it is the result of the government's failure to effectuate the Court's order and statutory obligation to transport Mr. Larson to a suitable place of hospitalization *Compare* § 3161(h)(1)(F) (governing any "delay resulting from transportation…to and from places of examination or hospitalization") *with* § 3161(h)(4) (governing "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial").

### IV. THE PROPER REMEDY IS ORDERING THE BOP TO IMMEDIATELY DESIGNATE A FACILITY, TRANSPORT MR. LARSON TO THAT FACILITY, AND SUBMITTING ITS REPORT BY NOVEMBER 25, 2024

Mr. Larson cannot be detained indefinitely to determine if he can be restored. One district court in the Tenth Circuit tracks almost perfectly. In *United States v. Leusogi*, No. 2:21-CR-32-TS, 2022 WL 11154688, at *3 (D. Utah Oct. 19, 2022), the court ordered the defendant transferred to FMC Butner within seven days after finding the IDRA's four-month period had been violated (and following *Donnelly*'s remedy). The government was unable, however, to comply with the Court's order and have the defendant transferred within the seven days. *United States v. Leusogi*, No. 2:21-CR-32-TS, 2022 WL 16855426 (D. Utah Nov. 10, 2022). The Court promptly dismissed the case.

---

[5] *See, e.g., United States v. Sparks,* 885 F. Supp. 2d 92, 100-101 (D.D.C. 2012); *United States v. Black,* No. 21-CR-009, 2022 WL 17170707, at *6 (N.D. Okla. Nov. 22, 2022); *United States v. Dellinger,* 980 F. Supp. 2d 806, 812 (E.D. Mich. 2013); *United States v. Wasik,* 956 F. Supp. 2d 175, 178 (D.D.C. 2013); *United States v. Hernandez-Amparan,* 600 F. Supp. 2d 839, 843 (W.D. Tex. 2009). *Cf. United States v. Bauer,* 286 F. Supp. 2d 31 (D.D.C. 2003) (rejecting the government's argument that § 3161(h)(1)(A) permits blanket transportation delays); *but see United States v. Pendleton,* 665 F. App'x 836, 839 (11th Cir. 2016); *United States v. Patterson,* 872 F.3d 426, 433-34 (7th Cir. 2017); *United States v. Romero,* 833 F.3d 1151, 1154-55 (9th Cir. 2016).

*Id.* Simply put, the judge put a strict deadline on the government's transfer of a defendant to a BOP facility because the time period had lapsed, and when the government failed to comply, it dismissed the case. The same thing will happen here if the BOP is not required to immediately designate a facility and transport Mr. Larson to that facility.

The remedy for a STA violation would lead to the same result:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment *shall* be dismissed on motion of the defendant.

§ 3162 (a)(2) (emphasis added). *See, e.g., United States v. Olivas*, No. 21-MJ-2051-MAT, 2022 WL 17084399, at *6 (W.D. Tex. Nov. 17, 2022) (dismissing the indictment on speedy trial grounds because the government failed to have the defendant transported for a restoration evaluation). At this point, 32 days have elapsed, the clock will start running again on November 23, 2024 – and will expire on December 31, 2024.

## V.   CONCLUSION

Based on the foregoing, Mr. Larson respectfully requests the Court order the BOP to designate an appropriate facility, within 7 days, transport Mr. Larson to that facility, and provide the Court with its evaluation by November 25, 2024. If BOP fails to do either, the Court should dismiss this case.

Respectfully submitted, this 25th day of September, 2024.

VIRGINIA L. GRADY
Federal Public Defender

*s/ Jared Scott Westbroek*
JARED SCOTT WESTBROEK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
Email: jared_westbroek@fd.org
Attorney for Mr. Larson

CERTIFICATE OF SERVICE

      I hereby certify that on September 25, 2024, I electronically filed the foregoing **DANIEL LARSON'S STATUS REPORT AND REQUEST FOR IMMEDIATE TRANSPORT TO A "SUITABLE FACILITY"** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

      Alison M. Connaughty, Assistant United States Attorney
      Email: alison.connaughty@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

      Daniel Larson (via U.S. Mail)

      VIRGINIA L. GRADY
      Federal Public Defender

      *s/ Jared Scott Westbroek*
      JARED SCOTT WESTBROEK
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone: (303) 294-7002
      Email:  jared_westbroek@fd.org
      Attorney for Mr. Larson