IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Criminal Case No. 1:24-cr-130-RMR

UNITED STATES OF AMERICA

    Plaintiff,

v.

DANIEL LARSON,

    Defendant.

---

### ORDER

---

On January 22, 2026, and then again on February 3, 2026, this matter came before me pursuant to 18 U.S.C. § 4247(d) to determine whether Defendant has been restored to competency. The Government argues that Defendant's competency has been restored, and he is now mentally competent to stand trial. Defendant contests that he is competent to stand trial and argues that it is unlikely his competency will ever be restored. For the reasons stated herein, the Court finds that Defendant Daniel Larson has been restored to competency and is competent to proceed.

    **I.**    **BACKGROUND**

On April 25, 2024, Mr. Larson was indicted on six counts of Use or Threatened Use of Explosive Material in violation of 18 U.S.C. § 844(e) (Counts 1-5, 7) and one count of Interstate Communication of Threats in violation of 18 U.S.C. § 875(c) (Count 6). ECF No. 1. On May 23, 2024, the Court granted the parties' Joint Motion for a

1

Psychological/Psychiatric Evaluation, ECF No. 17, to determine whether Defendant was both competent at the time of the alleged offenses in the indictment and whether he is currently competent to aid counsel in his defense of this case, ECF No. 18. On July 11, 2024, the evaluation concluded that Defendant was not currently competent to proceed with his case and that he was not currently competent to waive his right to trial in a knowing, voluntary, and intelligent manner. ECF No. 22. On July 26, 2024, the Court ordered the Defendant be committed to the custody of the Attorney General to "hospitalize Defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as necessary to determine whether there is a substantial probability that in the foreseeable future, he will attain the capacity to permit the proceedings to go forward" pursuant to 18 U.S.C. § 4241(d). ECF No. 26.

On December 16, 2024, Defendant was admitted to the U.S. Medical Center for Federal Prisoners (the "BOP Medical Center"). *See* ECF No. 51. On May 5, 2025, the Court received a Forensic Psychological Report Brief Status Update, and Extension Request pursuant to Title 18, U.S. Code, Section 4241(d) from the Bureau of Prisons ("BOP"). ECF No. 51. At that time, the parties agreed with the report's conclusion that an additional one hundred twenty (120) days for purposes of 18 U.S.C. § 4241(d)(2)(A) was appropriate. ECF No. 44. The Court granted the extension. ECF No. 54. On August 22, 2025, the Court received a Forensic Psychological Report Brief Status Update, and Extension Request pursuant to Title 18, U.S. Code, Section 4241(d) from the BOP. ECF No. 56. The Government concurred with the report's conclusion that an additional one

2

hundred twenty (120) days for purposes of 18 U.S.C. § 4241(d)(2)(A) was appropriate. Defendant did not concur.

On September 18, 2025. The Court held a hearing on the BOP's request to extend Defendant's commitment for treatment by an additional 120 days for purposes of 18 U.S.C. § 4241(d)(2)(A). ECF No. 64. At the hearing, the Court granted Defendant's oral motion for a third-party evaluation of Defendant and took under advisement Defendant's oral motion for an evidentiary hearing as to his restorability. *Id.* On November 3, 2025, Defendant filed a five-page report from Dr. Mark Mills, opining that Defendant cannot be restored to competence. ECF No. 67-1. On November 10, 2025, Defendant renewed his request for an evidentiary hearing for the Court to rule on his restorability. ECF No. 70. On November 18, 2025, the Court issued a Minute Order stating it would set a hearing date once it had the opportunity to review the forthcoming Psychological Report from the BOP after the 120-day extension expired on December 22, 2025. ECF No. 73.

On December 2, 2025, Defendant filed an Objection to his Continued Detention. ECF No. 75. Defendant argued that the Court did not make "an express finding that 'there is a substantial probability' the defendant will be restored to competency within the additional period of time requested" as required by 18 U.S.C. § 4241(d)(2). On December 16, 2025, the Court issued a Minute Order, finding nunc pro tunc, that there is, as of August 22, 2025, a substantial probability that with the additional 120 days requested by the BOP, Defendant will be restored to competency. ECF No. 128. The Court ordered the Government to file a response to Mr. Larson's Objection to his

Continued Detention and set an evidentiary hearing on Larson's restorability and continued detention for January 9, 2026. On December 19, 2025, Defendant asked the Court to reschedule the hearing, ECF No. 80, which the court did for January 22, 2026, ECF No. 81. On December 22, 2025, the Court received an evaluation from the BOP opining that Mr. Larson is mentally competent to stand trial at this time. ECF No. 82.

On January 22, 2026, and February 3, 2026, the Court held a restoration hearing pursuant to 18 U.S.C. §§ 4241(e) and 4247(d). ECF Nos. 107, 117. During the hearing, the Government introduced a letter from John Linn dated December 22, 2025 (Exhibit 1), the Certificate of Competency dated December 22, 2025 (Exhibit 2), Dr. Katlyn Hanson's Forensic Psychological Report dated December 22, 2025 (Exhibit 3), and Dr. Mills' Report dated October 31, 2025 (Exhibit 5). Defense Counsel introduced a Forensic Evaluation dated July 11, 2024 from the BOP (Exhibit A), a Forensic Psychological Evaluation dated April 24, 2025 from the BOP (Exhibit B), a Forensic Psychological Evaluation dated August 22, 2025 from the BOP (Exhibit C), a Psychiatric Evaluation dated October 31, 2025 from Dr. Mills (Exhibit D), and a Restricted Psychiatric Report dated December 22, 2025 (Exhibit E).[1] Dr. Hanson, a doctor of psychology employed by the BOP, and Dr. Mills, a psychiatrist hired by defense counsel, testified at the hearing.

---

[1] During the January 25, 2026, the Government admitted Exhibits 1-4 and Exhibit 5, and Defendant admitted Exhibits A-E. Exhibits 1-3 are the same as Exhibit E and are located at ECF No. 82. Exhibit 5 is the same as Exhibit D and is located at ECF No. 67-1. Exhibit A is located at ECF No. 22. Exhibit B is located at ECF No. 47. Exhibit C is located at ECF No. 56. For ease of reference, the Court will refer to Exhibits by their respective ECF number. For instance, here, ECF No. 22 was entered as Exhibit A.

## II.     LEGAL STANDARD

Section 4241(e) of the Insanity Defense Reform Act of 1984 sets forth the procedure for discharge of a person committed to the custody of the attorney general for restoration of competency:

> (e) Discharge. – When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant.

18 U.S.C. § 4241(e). After the court holds a hearing pursuant to 18 U.S.C. § 4247(d), the court considers whether, "by a preponderance of the evidence the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense." *Id.* A defendant is competent if he has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

## III.     ANALYSIS

### A.     *Dr. Hanson's Competency Determination*

The Court will address whether Defendant has been restored to competency. In a Forensic Psychological Report dated December 22, 2025, Dr. Hanson opines that Defendant has been restored so long as he continues "his current medication regimen,"

5

which includes antipsychotic medication daily. ECF No. 82 at 24. The first witness to testify at the hearing was Dr. Hanson. Dr. Hanson spent close to a year treating Defendant. She ultimately diagnosed Defendant with Autism Spectrum Disorder ("ASD"), Level 1, and Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. ECF No. 82 at 20. She administered the MacArthur Competence Assessment Tool-Criminal Adjudication ("MacCAT-CA"), a tool used to evaluate a defendant's capacity to proceed to adjudication, to assess Defendant's competency. During her testimony, she explained that the MacCAT-CA measured three components: 1) the Defendant's factual understanding of the legal proceedings, 2) a rational understanding of the legal proceedings, and 3) his ability to work with defense counsel. Dr. Mills, in general, agrees that Defendant has a factual and rational understanding of the legal proceedings. The dispute is with the third component. Dr. Hanson and Dr. Mills disagree as to whether Defendant can "appraise outcomes of [his] case related to specific concerns such as punishment, and ability to trust and work with defense counsel." ECF No. 82 at 19. As Dr. Hanson stated in her report, this component is "sensitive to delusional or implausible reasoning." *Id.*

Dr. Hanson testified that throughout the year at the BOP Medical Center, Defendant expressed his understanding of the charges he faced as threats. However, he downplayed the seriousness of the charges. He consistently identified potential penalties he faced, including imprisonment, fines, and supervised release. He understood the differences between pleading guilty and going to trial. He understood

6

that the government has the burden of proof at trial. Dr. Hanson's primary concern was Defendant's ability to work with his attorney.

Dr. Hanson testified that when Defendant first arrived at the BOP Medical Center in December 2024, he suffered from the delusional belief[2] that he was in a relationship with a celebrity singer. Defendant perseverated on this relationship in his communications with staff at the BOP Medical Center and with his defense counsel. Defendants' belief in this relationship and his own celebrity status as a singer and model is reinforced by individuals on social media who encouraged these delusions. For example, while housed in the BOP Medical Center, Defendant received "fan mail" from individuals who provided Defendant screenshots of conversations regarding his purported relationship with the celebrity singer. Defendant's "susceptibility, easily impressionable presentation, and tendency to significantly downplay the seriousness of his charges" led to Dr. Hanson's concerns regarding his ability to participate in his defense. ECF No. 82 at 24.

Beginning in February 2025, Defendant started taking antipsychotic medication. His psychotic symptoms improved with medication. Before taking the medication, Defendant perseverated on his delusions. Dr. Hanson reports that Defendant "no longer dominates interactions with conversations related to his delusional beliefs," and he has come to appreciate that the celebrity singer has nothing to do with this case. *Id.* at 24. He also participated in cognitive therapy and cognitive behavioral therapy at the BOP

---

[2] Delusions are defined by the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision* ("DSM-5-TR") as fixed beliefs that are not amenable to change in light of conflicting evidence.

Medical Center. He now "demonstrates his appreciation and understanding of the gravity of his current legal situation." *Id.*

The cross-examination of Dr. Hanson focused on the difference between delusional beliefs and fantastical thinking, Defendant's history, and his cognitive abilities. Dr. Hanson testified about the difference between delusional beliefs and fantastical thinking. Delusional beliefs are a psychotic symptom that can be treated with antipsychotic medication. Fantastical thinking is associated with ASD and is used as a way "to avoid unsatisfying realities." ECF No. 82 at 20. Fantastical thinking can be treated with therapy. It is difficult to differentiate the two. Dr. Hanson opined that Defendant primarily suffered from delusional beliefs because he responded to antipsychotic medication favorably. He demonstrates increased flexibility and amenability with his thinking. He no longer perseverates on his relationship with the celebrity singer. However, he still would like to be a famous singer/songwriter, which Dr. Hanson attributes to fantastical thinking strengthened by interactions with his "fans." *Id.*

Dr. Hanson testified about Defendant's mental health history. Records dating as far back as 2011, when Defendant was 12 or 13 years old, indicate that Defendant demonstrated executive dysfunction concerns, which defense counsel argues is required to be able to consult with your attorney. The 2011 records also indicate that Defendant had a history of headbanging. The behavior, or similar behavior, continued into adulthood. In 2017, around the age of 19, Defendant was hospitalized after "he hit his head, broke multiple holes in the walls, and threatened to kill himself" because he felt overwhelmed. ECF No. 82 at 8. In 2023, around the age of 26, he was brought to a

hospital for "punching himself in the face" after getting upset. *Id.* at 9. When he was in the Federal Detention Center, before being admitted to the BOP Medical Center, he hit himself in the face because he was frustrated.

There are also reports of other head injuries/trauma. The report from 2011 states that Defendant's mother reported that he had a "non-accidental head injury around age 3 weeks, and a seizure around 5 months." ECF No. 22 at 4. Defendant reported that when he was eight years old, his mother hit him with a hammer. ECF No. 82 at 4. Dr. Hanson did not conduct cognitive testing, but the 2011 report indicates that Defendant underwent cognitive testing in 2007 and 2009 and adaptive functioning testing in 2008. Dr. Hanson opined that Defendant did not qualify for an intellectual disability diagnosis. Intellectual disability is characterized by limitations in both intellectual functioning and adaptive functioning. For intellectual functioning, the standard for an intellectual disability diagnosis is two standard deviations below the mean IQ score, which equates to approximately 70 or below. The average of Defendant's two IQ score evaluations is 72. The records from 2011 indicate that "neither [Defendant's] cognitive skills nor his adaptive functioning were significantly impaired." ECF No. 82 at 8. Dr. Hanson did testify that she would agree that Defendant has "borderline cognitive functioning." Dr. Hanson also agreed that Defendant's head injuries could further exacerbate his cognitive abilities.

### B.   Dr. Mills' Incompetency Determination

In the report of his psychological evaluation dated October 31, 2025, Dr. Mills opines that Defendant cannot be restored to competency because "his incompetence is largely

a function of his ASD, which (largely) cannot be treated." ECF No. 67-1 at 4. Dr. Mills testified that he agrees with Dr. Hanson that Defendant suffers from ASD and schizophrenia. He argues that both conditions are neurodevelopmental disorders that worsen over time. He testified that only Defendant's psychotic symptoms can be alleviated, but that Defendant's cognitive symptoms cannot be alleviated. He opined that if Defendant's primary diagnosis is schizophrenia, then it would allow for some substantial restoration, but if his primary diagnosis is ASD, it would not allow for restoration. Dr. Mills believes that ASD is the controlling diagnosis for Defendant. Dr. Mills agrees that the structured environment Defendant was in at the BOP Medical Center, the antipsychotic medication, the regular interaction with providers, and the courses he took at the BOP Medical Center helped. But ultimately, he believes that Defendant's cognitive difficulties prevent him from being able to meaningfully interact with his defense counsel. Dr. Mills testified that Defendant is not competent because of his cognitive deficits related to his ASD and borderline intellectual function. The antipsychotic medication only moderated the distracting factors Defendant was experiencing, such as his delusional beliefs. But because of his ASD and borderline intellectual functioning, it is unlikely that Defendant would be able to recall what he was thinking when he allegedly made the threats, and he is likely to acquiesce to his counsel.

To demonstrate his point, Dr. Mills testified that he met with Defendant and his defense counsel in the week before the hearing. At that time, Defendant's defense counsel spent an hour explaining to Defendant the difference between him being found

competent to proceed rather than incompetent to proceed, including the ability to raise the insanity defense if he was found competent to proceed. Defendant did not ask any clarifying questions during the conversation. At the end of the conversation, Defendant said he would rather be found competent and go to trial.

### C. The Court's Finding of Competence

The Court finds by the preponderance of evidence that the Government has demonstrated that the Defendant is competent to proceed, that is, the Court finds that Defendant "has recovered to such an extent that he is able to understand the nature and consequences against him and to assist properly in his defense." 18 U.S.C. § 4247(d). There appears to be no dispute that Defendant has a grasp of the charges against him. The question is, can he assist properly in his defense due to mental illness? The Court finds that he can.

At the hearing, defense counsel argued that Defendant's ASD, borderline intellectual functioning, and history of traumatic brain injuries impact his executive and adaptive functioning to the point that he cannot assist properly in his defense. Defense counsel argues that Defendant has suffered from poor frustration tolerance and ASD his whole life. Defense counsel believes being in a courtroom will make Defendant's ASD more symptomatic, and while there are interventions for ASD, there is no cure. Defense counsel believes that Defendant may be disruptive during trial or entertain fantastical thoughts to escape the stressful situation. Defense counsel argued that these deficiencies have been present and observable in Defendant since 2011, and despite intervention, they have continued. However, both Dr. Hanson and Dr. Mills testified that

Defendant's mental health improves with medication, therapy, and a structured environment like the BOP Medical Center. The 2011 records state that he was prescribed the same antipsychotic medicine he is currently on and indicate his mental health improved with medication, therapy, and a structured environment.

As the Honorable Philip A. Brimmer noted in *United States v. Coad*, No. 23-cr-00077-PAB, ECF No. 169 at 5 (D. Colo Jan 13, 2025), "competency is a fluid concept." (citing *United States v. Cerno*, 2023 WL 8571362, at *5 (D.N.M. Dec. 11, 2023)). Defendant is only incompetent if he is "presently suffering from a mental disease or defect rendering him mentally incompetent" 18 U.S.C. § 4241(d). The Court does not find that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent. To make its determination, the Court "rel[ies] on a number of factors, including medical opinion[s] and the court's observation of the defendant." *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998). "A competency determination is factual rather than legal." *Cerno*, 2023 WL 8571362, at *5 (citing *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000)).

While the Court finds both Dr. Hanson and Dr. Mills to be qualified and credible, the Court gives more weight to Dr. Hanson's assessment of Defendant's competency. *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (finding the district court did not clearly err in assigning more weight to the findings of competence of the government forensic psychologist than to the contrary conclusion of a psychiatrist retained by the defense). Dr. Hanson met with Defendant weekly for nearly a year and saw his improvement with medication, treatment, and education. Dr. Mills testified that he only

spent 20 to 30 minutes with Defendant when he first met with him, which was before Dr. Hanson determined Defendant was competent. Dr. Mills met with Defendant a second time before the hearing on February 3, 2026; however, this meeting was in the presence of Defendant's defense counsel and was not documented in Dr. Mills' report. Dr. Hanson testified that, through antipsychotic medication, Defendant's delusional beliefs have subsided to the point that he is now able to assist properly in his defense and work with defense counsel to develop a defense strategy. The evidence demonstrates that throughout the restorative process, Defendant was receptive to voluntarily taking his prescribed antipsychotic medication, continues his medication to this day, and does not plan on discontinuing his medication.

Defendant did not testify at the hearing, but the Court did have an opportunity to observe Defendant over two days in the courtroom. Defendant sat calmly and quietly for over five and a half hours of testimony over two days. He did not engage in disruptive behavior. He appeared engaged, following the back-and-forth during cross-examination of the expert witnesses. He conferred with his counsel. Defense counsel argues that Defendant is easily impressionable and may be susceptible to going along with whatever defense counsel suggests. Dr. Mills' own example counters that argument. Dr. Mills testified that defense counsel spent over an hour explaining to Defendant the pros and cons of being found competent to proceed, insinuating that it would be beneficial to be found incompetent. At the end of the conversation, Defendant did not go along with what his counsel suggested; instead, he said he would rather be found competent so that he could proceed to trial.

Defense counsel argues that Defendant's competency involves more than getting Defendant's delusional beliefs under control. Defense Counsel argues it has more to do with Defendant's ASD and cognitive abilities. Defense counsel argues that although Defendant's legal knowledge and understanding appear to demonstrate competency because he repeats information back to the evaluators, he cannot understand complex ideas or create and implement plans. However, a below-average IQ or cognitive ability is not a reason to find someone incompetent. *Miles*, 61 F.3d at 1472 (holding trial court did not err in determining that defendant was competent to plead despite being "borderline mentally retarded" with an IQ of 71); *see also United States v. Pervis*, 937 F.3d 546, 549 (5th Cir. 2019) (holding that the district court's determination that that defendant was competent to stand trial was not clearly arbitrary or unwarranted. despite an "IQ score of 62 +/- 5 [and reported] poor adaptive functioning since childhood").[3]

For the reasons articulated above, the Court finds, based on a preponderance of the evidence, that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, within the meaning of 18 U.S.C. § 4241(e).

### D.  *Speedy Trial Act*

At the end of the competency hearing, the Court requested that the parties file their positions as to the Speedy Trial Act calculation. ECF No. 117. On February 9,

---

[3] The Court recognizes that in both *Miles*, 61 F.3d at 1464, and *Pervis*, 937 F.3d at 554, there was evidence of malingering. In which case, the objective evaluation of the defendant's intellectual and adaptive functioning may be tainted by malingering, leaving observational evidence as the best evidence. No one has testified or argued that Defendant is malingering. The records from 2017 notes a rule out diagnosis, indicating additional information is needed to confirm or excluded the diagnosis, of malingering. ECF No. 82 at 9.

2026, the parties submitted a Joint Notice of Speedy Trial Calculation, agreeing that there are 57 days remaining on the Speedy Trial Act clock. ECF No. 118.

### IV.    CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1. That the Certificate of Competency, ECF no. 82 at 2, is accepted and approved;

2. That Defendant Daniel Larson has been restored to competency and is competent to proceed;

3. That pursuant to 18 U.S.C. § 3161(h)(1)(A) and (4), the period of delay, *i.e.*, from no later than September 18, 2025, through the date of this Order, resulting from these competency proceedings shall be excluded in computing the time within which the trial must commence under 18 U.S.C. § 3161(c);

4. A separate order will issue setting a trial date for **April 20, 2026**, and a pretrial motions deadline for **March 20, 2026,** along with other pretrial deadlines; and

5. That Defendant shall remain at the Federal Bureau of Prisons U.S. Medical Center until the pretrial motions' deadline of March 20, 2026, passes.

Dated: March 3, 2026

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge