IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00130-RMR

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     DANIEL LARSON

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Jasand Mock, Assistant United States Attorney for the District of Colorado, and the defendant, Daniel Larson, personally and by counsel, Jeffrey E. Feiler, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

#### A. Defendant's Agreement

The defendant agrees to

(1)     plead guilty to Count 6 of the Indictment charging a violation of Title 18, United States Code, Section 875(c);

(2)     waive certain appellate and collateral attack rights, as explained in detail below; and

(3)     abandon his rights in certain property as more fully described below.

**COURT EXHIBIT 1**

## B. Government's Obligations

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees not to oppose the defendant's motion for a variant sentence of time served. (Mr. Larson has been in custody since his arrest on April 30, 2024.) The government further agrees to move to dismiss Counts 1, 2, 3, 4, 5, and 7 of the Indictment with prejudice. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. n.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

## C. Defendant's Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and

voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute of conviction;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 17; or

(3)    the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

The United States agrees not to argue a procedural bar to a prosecutorial misconduct claim raised in a § 2255 petition based on the failure of the defendant to raise that issue on direct appeal.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may

appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## D. Abandonment

The defendant agrees that the below-described property, which was seized from the defendant for evidentiary purposes, and which is currently in the custody or control of the FBI, was lawfully seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty. The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that the FBI may dispose of the property without further obligations. The specific property includes: one Motorola Moto G Stylus mobile phone with IMEI 352398200704759.

## II.    ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 18 U.S.C. § 875(c) are as follows:

*First*: the defendant knowingly transmitted a communication containing a threat to injure the person of another;

*Second*: the defendant transmitted the communication with the intent to make a threat, or with knowledge that the communication would be viewed as a threat;

*Third*: the communication was transmitted in interstate or foreign commerce.

A "threat" is a serious statement expressing intent to instill fear, which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from mere political argument, idle talk, exaggeration, or something said in a joking manner. It is not necessary that the defendant intended to carry out the threat, nor is it necessary that the defendant had the ability to carry out the threat.

## III.    STATUTORY MAXIMUM SENTENCE

Count 6 of the Indictment is: not more than 5 years' imprisonment; maximum term of supervised release 3 years; maximum fine $250,000; $100 mandatory victim's fund assessment fee; restitution is not applicable in this case.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

As described in more detail below, between July 3, 2023 and March 23, 2024, the defendant Daniel Larson posted messages to social media in which he threatened to blow up buildings and to kill a particular federal law enforcement officer. The defendant was physically present in Colorado when he posted the threatening messages to social media, and the social media posts were transmitted in interstate commerce.

On July 3, 2023, the defendant posted to Social Media Platform 1 (SMP_1): *"Next I will bomb the courthouse they've destroyed my future and no venues want to book me;" "So to be honest with the stress I am currently going through because of my jackass disability service and the Denver county Court not believing me that I was on contract and that I had other things that were really going on when everybody called me a liar. Everyone is lucky that I don't go out and buy a machine gun and actually do what Bobby saying."*

On August 7, 2023, the defendant posted to SMP_1: *"I'm about to bomb Ddrc."* Immediately prior to this post, defendant posted bomb emojis to SMP_1. That same day, the Developmental Disabilities Resource Center (DDRC) in Lakewood, Colorado, received a call from an individual who reported that the defendant had made threats about a bomb in the building. The building was subsequently evacuated, DDRC called 911 and the Lakewood Police Department (LPD) responded. LPD conducted a safety sweep with a bomb dog on all four floors of the DDRC building and no bombs were located.

On August 29, 2023, the defendant posted a video to SMP_1, in which defendant stated: *"And yes, I will bomb the white house. I will fucking bomb the white house and I will bomb every single police station in the entire US."* That same day, defendant also posted to SMP_1: *"I will drop bombs on the white house"*; *"I'm going to the white house tonight."*

On September 26, 2023, the defendant posted to SMP_1: *"I'm going to bomb the Colorado capital building"* and *"I'm going to bomb the university of Colorado"*.

A United States Secret Service Special Agent also working as an FBI Task Force Officer (TFO 1) was involved in the investigation of the defendant's threating posts to social media. As part of that investigation, TFO 1 interviewed the defendant on or about August 18, 2023. TFO 1 subsequently contacted and interviewed the defendant on several other occasions, including August 30, 2023, September 6, 2023, October 3, 2023, October 19, 2023, and November 30, 2023. During these interviews, the defendant was admonished that threats to blow up locations or harm other people could violate the law, and TFO 1 explained the elements of 18 U.S.C. § 875(c) to the defendant. In a social media post on or about September 26, 2023, the defendant acknowledged "I might be in legal trouble with the feds for the threats I've made."

From his interactions with TFO 1 between August 2023 and November 2023, the defendant knew that TFO 1 was a TFO and a United States Secret Service Special Agent.

On December 10, 2023, the defendant posted on SMP_1: *"Stop calling me a pedophile or I will set [TFO 1's] house on fire* [fire emoji, firetruck emoji]". On December 25, 2023, the defendant posted to social media platform 2 (SMP_2) a video in which he stated: *"I will fucking have [TFO 1] fucking killed."* The defendant admits that he intended each of these communications as threats to TFO 1 and that he knew each communication would be viewed as a threat.

On March 23, 2024, defendant posted video on SMP_2 in which he stated: *"I will bomb the FBI headquarters"*; *"The FBI can go ahead and press legal charges on me, I will just kill their ass"*.

All of the above-described conduct occurred while the defendant was present in the State and District of Colorado.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a)    Under Section 2A6.1(a)(1), the base offense level is 12.

b)    The following specific offense characteristic applies: A two-level increase applies because the offense involves more than two threats. *See* U.S.S.G. § 2A6.1(b)(2).

c)    The following victim-related adjustment applies: A six-level increase applies because threats were directed against a government officer. *See* U.S.S.G. § 3A1.2.

d)    The adjusted offense level is 20.

e)    The parties agree that a three-level decrease applies based on the defendant's acceptance of responsibility. The resulting total offense level is 17.

f)    The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category II.

g)      The career offender/criminal livelihood/armed career criminal adjustments do not apply.

h)      The advisory guideline range resulting from these calculations is 27 to 33 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

i)      Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $10,000 to $95,000, plus applicable interest and penalties.

j)      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be at least one year but not more than three years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

//

//

//

//

//

//

//

//

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 4-9-26

Daniel Larson
Defendant

Date: 4-9-26

Jeffrey E. Feiler
Attorney for Defendant

Date: 4/9/26

Jasand Mock
Assistant U.S. Attorney

Page 10 of 10